

U.S. DISTRICT COURT - N.D. OF N.Y.
# FILED
APR 12 2002
AT_____ O'CLOCK _____
Lawrence K. Baerman, Clerk - Syracuse

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIBERMARK, INC., ) | |
| ) | |
| Plaintiff, ) | **02 -CV- 0517** |
| ) | |
| v. ) | CIVIL ACTION NO. _____ |
| ) | |
| BROWNVILLE SPECIALTY ) | |
| PAPER PRODUCTS, INC. ) | *TJM* |
| ) | |
| Defendant. ) | |

## COMPLAINT

### *I. Introduction*

1.      This action involves efforts by the defendant, Brownville Specialty Paper
Products, Inc. ("Brownville") to copy and sell lesser quality imitations of products bearing the
unique and distinctive trademarks of the plaintiff, FiberMark, Inc. ("FiberMark"), in violation of
Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the common law of unfair competition,
Section 349 of the New York General Business Law, and Section 360-l of the New York General
Business Law.

{H0103783.1}

2.      For more than 100 years, FiberMark and its predecessor companies, Case Brothers and Boise Cascade Office Products, have made and sold unique and distinctive cover materials for presentation folders, document covers, file folders and binders used in businesses, schools and homes throughout the country and other parts of the world.  These products, sold under the trademarks Genuine Pressboard™ and Press-Guard®, have a unique, distinctive and immediately recognizable "mottled" or "marble" look, which itself is a FiberMark trademark. This mottled look (the "Mottled Mark") can be seen in Exhibit A attached.

3.      FiberMark's Mottled Mark is famous throughout the office products industry. Products incorporating the Mottled Mark are made and sold by leading manufacturers, distributors and retailers of school and office supplies, including Ampad, Smead, ACCO (Wilson Jones), Esselte (Oxford), Mead, Boise Cascade Office Products, Staples, Office Depot, Semco, Comet School Supplies, Norcom and many others.

4.      FiberMark's Mottled Mark is known not only for its unique and distinctive mottled or marble appearance, but also is associated with its strength, rigidity, exceptional durability, relative ease of conversion, smoothness, and variety of colors.  Products containing FiberMark's Mottled Mark are unmistakable as FiberMark products.  No other company has been able to duplicate the unique and distinctive Mottled Mark look while preserving the other high quality characteristics for which products having the FiberMark Mottled Mark are known.

5.      Brownville recently has begun to market and sell lower-quality products with FiberMark's Mottled Mark ("Knock-Off Products").  On information and belief, the Knock-Off Products are made using a photographic reproduction of the Mottled Mark so as to duplicate the look and confuse or deceive the purchasing public.  Brownville's Knock-Off Products appear identical to FiberMark's well-known and recognized Mottled Mark products, but the Knock-Off

2

Products lack the stiffness, rigidity and durability of FiberMark's genuine products containing the Mottled Mark.

6.      FiberMark seeks injunctive relief and damages to prevent Brownville from deceiving and confusing consumers and from destroying the goodwill built up by FiberMark in the Mottled Mark by selling lower-quality Knock-Off Products.

## II.  Parties

7.      The plaintiff, FiberMark, is a public company organized under the laws of the State of Delaware, with a principal place of business in Brattleboro, Vermont.  FiberMark is a leading manufacturer of specialty fiber-based materials made from a wide array of fibers, natural (such as wood pulp and recovered paper) and man-made.  FiberMark makes materials in large rolls and sheets, which are then sold to manufacturers of finished or semi-finished consumer and industrial products.  These include school and office supply products which incorporate the Mottled Mark, such as file folders, report covers, binders, notebooks, and promotional materials.

8.      On information and belief, the defendant, Brownville, is a company organized under the laws of Delaware, with a principal place of business in Brownville, New York. Brownville is a competitor of FiberMark's in the sale of products to office supply manufacturers.

## III. Jurisdiction and Venue

9.      This Court has subject matter jurisdiction over FiberMark's claims because they arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and because the parties are completely diverse and the amount in controversy exceeds $75,000.  Federal subject matter jurisdiction is, therefore, conferred by 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1338(b) (unfair competition), and 15 U.S.C. § 1121 (Lanham Act).  Subject matter

jurisdiction exists over FiberMark's state law claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

10.    This Court has personal jurisdiction over Brownville under Section 301 of the New York Civil Practice Laws and Rules because Brownville does business within the State of New York.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because Brownville resides and does business in this judicial district.

## IV. Background Facts

### A.    FiberMark and the Mottled Mark

12.    FiberMark and its predecessor companies (collectively referred to as "FiberMark") have been in business for more than 100 years. Throughout that time, FiberMark has produced paper for manufacturers of office and school supplies. Since at least 1875, FiberMark has manufactured and sold paper products that incorporate a unique and distinctive design or look – the "mottled" or "marble" design.

13.    Over this century of use in commerce, this distinctive "mottled" or "marble" look – referred to as the Mottled Mark – has become associated with FiberMark, along with strength, variety of colors, smoothness, rigidity, and exceptional durability that has long been a characteristic of products incorporating the Mottled Mark.

14.    Products that use the Mottled Mark are familiar to virtually every consumer who has ever used school notebooks, classification file folders, report covers, and binders. FiberMark's direct customers are companies often referred to as "converters" – companies which convert paper, paperboard or pressboard into finished or semi-finished consumer products.

4

These converters consider the Mottled Mark to be distinctive and associate it with FiberMark. Paper with the Mottled Mark is known for its high quality and consumer appeal.

15.     FiberMark's products containing the Mottled Mark are produced through a unique design and manufacturing system that does not exist anywhere else in the world.  FiberMark currently owns two trademarks under which products containing the Mottled Mark products are sold – Genuine Pressboard™ and Press-Guard®.  However, the Mottled Mark is unique and distinctive standing alone, and, in fact, indicates the same source of the products – FiberMark. For these reasons, among others, the Mottled Mark is immediately associated with FiberMark and a long history of high quality.

**B.     *Brownville's Knock-Off Efforts***

16.     Although, on information and belief, Brownville has been in business for over ten years, it did not attempt until recently to make Knock-Off Products or otherwise to duplicate the Mottled Mark.  Brownville has now begun manufacturing, marketing and selling Knock-Off Products, attempting to capitalize upon FiberMark's unique and distinctive Mottled Mark.

17.     As part of this effort, Brownville hired a long-time FiberMark employee, Steven Steidle.  When he left FiberMark, Mr. Steidle was the Vice President of Sales and Marketing. During his employment at FiberMark, Mr. Steidle became extremely familiar with FiberMark's Mottled Mark, as well as FiberMark's manufacturing information and capabilities, product pricing and specifications, marketing plans, customer identity and terms of sales, and other FiberMark proprietary information.

18.     At the time Mr. Steidle left FiberMark's employ, on or about June 30, 1999, he was not only familiar with the Mottled Mark, not only knew that FiberMark considered the

mottled or marble design to be a trademark, but in fact was involved in the process by which FiberMark was seeking federal trademark registration for the Mottled Mark.

19.     Brownville is now offering for sale Knock-Off Products, and Mr. Steidle has attempted to sell the Knock-Off Products to FiberMark customers.

20.     FiberMark has obtained a sample of Brownville's Knock-Off Products.  Those products copy FiberMark's distinct mottled design.  On information and belief, the design for Brownville's Knock-Off Products is made by photographically reproducing the Mottled Mark of genuine FiberMark products onto lesser quality paperboard.

21.     By using cheaper, less dense material for the Knock-Off Products, Brownville is able to quote its converting customers prices that are 25% to 35% cheaper than prices for FiberMark's Genuine Pressboard™ or Press-Guard™ products.  Consequently, consumers will be deceived into thinking that they are receiving the same high quality, stiff, rigid and durable product that they have come to associate with products bearing the Mottled Mark.  In fact, they are receiving cheaper, less dense, lower quality products in disguise.

22.     On information and belief, Brownville is willfully trading upon the tradition, distinctiveness, and reputation of FiberMark's genuine Mottled Mark products with cheaper, lower-quality knock-offs.  Brownville well knows that the Mottled Mark is unique, distinctive, associated with, and owned by FiberMark.

23.     As a result of Brownville's knock-off efforts, consumers are confused, and will likely continue to be confused, or be mistaken or deceived as to the affiliation, connection, and/or association of Brownville and its low-quality Knock-Off Products with FiberMark, or as to the origin, sponsorship, or approval of Brownville's Knock-Off Products, and/or as to the nature, characteristics or qualities of the Knock-Off Products.

6

# COUNT I

## *(Federal Unfair Competition: Trade Dress, 15 U.S.C. § 1125(a))*

24.     FiberMark incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

25.     Brownville's Knock-Off Products are being offered for sale and sold in United States commerce.

26.     Brownville's conduct constitutes the use of words, terms, names, symbols and devices and combinations thereof, false designations of origin and false and misleading representations of fact that are likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection or association of Brownville with FiberMark, or as to the origin, sponsorship or approval of Brownville's goods, services or other commercial activities by Brownville.

27.     Brownville's conduct, including as described above, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

28.     On information and belief, Brownville's unlawful conduct, including as described above, was knowing and willful.

29.     Because of Brownville's conduct, FiberMark has suffered, and unless Brownville's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

30.     FiberMark is entitled to recover as damages Brownville's profits from the sale of Knock-Off Products.

## COUNT II

### *(Common Law Unfair Competition Under New York Law)*

31.     FiberMark incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

32.     Brownville's conduct is likely to cause confusion or to deceive purchasers as to the origin of Brownville's products.

33.     Brownville's conduct, including as described above, constitutes unfair competition in violation of New York common law.

34.     On information and belief, Brownville's unlawful conduct, including as described above, was knowing, willful and in bad faith.

35.     Because of Brownville's conduct, FiberMark has suffered, and unless Brownville's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

## COUNT III

### *(Deceptive Acts and Practices Under New York Law, N.Y. Gen. Bus. Law, § 349)*

36.     FiberMark incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

37.     Brownville's conduct, including as described above, harms consumers by selling into the marketplace lower-quality Knock-Off Products which appear to deliver the benefits of the FiberMark products bearing the Mottled Mark, but which, in fact, do not deliver such benefits.

8

38.    Brownville's conduct, including as described above, constitutes deceptive acts or practices prohibited in violation of Section 349 of the New York General Business Law.

39.    On information and belief, Brownville's conduct, including as described above, was knowing and willful.

40.    Because of Brownville's conduct, FiberMark has suffered, and unless Brownville's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

## COUNT IV

### (Injury to Business and Reputation and Dilution Under New York Law, N.Y. Gen. Bus. Law, § 360-l)

41.    FiberMark incorporates the allegations contained in the preceding paragraphs as if fully set forth here.

42.    FiberMark's Mottled Mark is distinctive.

43.    On information and belief, Brownville's unlawful conduct, including as described above, was knowing and willful.

44.    Brownville's conduct, including as described above, is likely to cause injury to the business or reputation of FiberMark or dilution of the distinctive quality of FiberMark's Mottled Mark in violation of Section 360-l of the New York General Business Law.

45.    Because of Brownville's conduct, FiberMark has suffered, and unless Brownville's conduct is preliminarily and permanently enjoined, will continue to suffer, actual damages and irreparable harm, as to which it has no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, FiberMark respectfully requests that this Court:

1.    Preliminarily and permanently enjoin Brownville and its predecessors, successors, divisions, subsidiaries, or joint ventures thereof, together with any and all parent or affiliated companies or corporations, and all officers, directors, employees, agents, attorneys, representatives, those acting in privity or concern with them, or on their behalf, from further infringing the Mottled Mark, or from using any other mark, brand, or designation that is a colorable imitation of the Mottled Mark, or is likely to be confused with the Mottled Mark, from using any mark in any manner so as to cause the dilution of the distinctive quality of FiberMark's Mottled Mark, and from engaging in further unfair competition and unfair or deceptive acts or practices;

2.    Award FiberMark its actual damages in an amount to be determined at trial;

3.    Award FiberMark as damages Brownville's profits from its sale of the Knock-Off Products;

4.    Award FiberMark treble its actual damages under 15 U.S.C. § 1117 as a result of Brownville's knowing and willful misconduct;

5.    Award FiberMark punitive damages because of Brownville's knowing, willful and bad faith acts of common law unfair competition in an amount to be determined at trial;

6.    Award FiberMark all of its actual costs and reasonable attorneys' fees in this action, as authorized by 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law, § 349;

7.    Enter judgment in favor of FiberMark on each of its claims; and

10

8.     Grant to FiberMark such other relief as may be just and warranted under the circumstances.


## JURY DEMAND

FiberMark demands a trial by jury on all issues so triable.


Dated: April 12, 2002


Respectfully submitted,

HANCOCK & ESTABROOK, LLP

David L. Nocilly
Bar Roll No. 510759
Office and P.O. Address
1500 MONY Tower I
PO Box 4976
Syracuse, New York 13221-4976
Telephone: (315) 471-3151

Mark G. Matuschak
Michael J. Bevilacqua
Lisa J. Pirozzolo
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

*Attorneys for Plaintiff FiberMark, Inc.*

# EXHIBIT A