**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**FIBERMARK, INC.,**

         **Plaintiff,**

  **vs.**               **CIVIL ACTION**
                    **7:02-CV-0517-TJM-DEP**


**BROWNVILLE SPECIALTY PAPER PRODUCTS, INC.,**

         **Defendant.**

_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


### DECISION & ORDER

**I.  Introduction**

  Plaintiff FiberMmark, Inc. ("FiberMark") commenced the instant action asserting claims

under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the common law of unfair competition,

and New York General Business Law §§ 349 (deceptive trade practices) and 360-l (anti-dilution).

The claims arose out of Defendant Brownville Specialty Paper Products, Inc.'s ("Brownville")

production and sale of Type II 1/2 and/or Type III pressboard with a "mottled" appearance printed

thereon.

  A jury trial was held and the jury returned a verdict in favor of Defendant on the federal

trade dress infringement claim under the Lanham Act, the New York unfair competition claim,[1] and

_____

  [1] Even though the jury found that FiberMark's claimed trade dress had acquired secondary
meaning, it also found that there was no likelihood of confusion between Plaintiff's products and

1

the anti-dilution claim under N.Y. Gen. Bus. Law § 360-l.  The jury found in favor of Plaintiff on

the deceptive acts and practices claim under N.Y. Gen. Bus. Law § 349.

Presently before the Court are cross-motions by Plaintiff and Defendant for judgment as a

matter of law pursuant to Fed. R. Civ. P. 50(b), and in the alternative, cross-motions for partial new

trials pursuant to Fed. R. Civ. P. 59(a) and, Plaintiff's motion for permanent injunctive relief

pursuant to N.Y. Gen. Bus. Law § 349(h).  Specifically, Plaintiff seeks judgment as a matter of law

on its federal trade dress infringement, unfair competition, and anti-dilution claims, and on its claim

for damages under § 349.  In the alternative, Plaintiff has moved for a new trial limited solely to its

claim for damages under § 349.[2]  Defendant seeks judgment as a matter of law on the deceptive acts

and practices claim and, in the alternative, a new trial on the same issue.

## II.  Facts

FiberMark and Brownville are both in the business of producing paper for office and school

supply manufacturers.  One of FiberMark's products is pressboard.  Pressboard is a dense, rigid

form of paperboard, categorized based on density, rigidity, and finish.  Three grades of pressboard

are known as Type I, Type II, and Type III.  Type I is the most dense and rigid grade of pressboard.

Currently, FiberMark is the only manufacturer of Type I pressboard in the United States.

FiberMark's Type I pressboard is known as Genuine Pressboard™.  When a clear acrylic coating and

leather grain embossing are added, it is known as PressGuard®.  Pressboard manufacturers sell their

products to converters.  Converters purchase the pressboard and then convert it into finished goods

_____

Defendant's products.  The latter finding disposed of both the federal trade dress infringement claim
and the New York unfair competition claim.

[2]    The jury awarded Plaintiff nominal damages of $1.00 on this claim.

(such as file folders, three-ring binders, notebooks, and report covers) for sale to retailers.

FiberMark's Type I pressboard products have a mottled appearance. The mottling is a result of the production process. Brownville does not produce a Type I product. Instead, it produces what it claims to be a Type II 1/2 coated and embossed pressboard product with a mottled appearance printed thereon (the Mansfield Cover). By definition, Brownville's product is an imitation pressboard. Brownville's products do not have the same technical specifications as FiberMark's Type I products. The Mansfield Cover's mottled appearance is created by printing a pattern on the surface of the pressboard with an inked print roll or cylinder. Defendant argues that it printed mottling on its product to satisfy the concerns of the converters that any alternative to Plaintiff's product would have to be mottled. Plaintiff argues that Defendant intentionally copied the unique mottled appearance of FiberMark's Type I pressboard to get a "free ride" on FiberMark's reputation.

After a trial, the jury found that FiberMark's mottled appearance acquired secondary meaning, but that there was no likelihood of confusion. The latter finding disposed of the federal trade dress infringement and unfair competition claims. When considering the anti-dilution claim, however, the jury found that the mottled appearance was not distinctive under New York General Business Law § 360-l. With regard to the deceptive acts and practices claim under New York General Business Law § 349, the jury found for Plaintiff and awarded nominal damages of $1.00.

## III. Standard of Review

The district court may grant a motion for judgment as a matter of law only if it finds, after viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable references in favor of the non-moving party, that there is insufficient evidence to support the verdict. Fabri v. United Techs. Intern., Inc, 387 F.3d 109, 119 (2d Cir. 2004). The district court cannot set

aside the jury's credibility findings and cannot find for the movant based on evidence the jury was entitled to discredit.  Id.  Thus, judgment as a matter of law should be granted "only if: (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]."  Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000) (citation omitted) (alterations original).

The district court should grant a motion for a new trial only when the district court is convinced "that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  Id. at 54 (quoting Atkins v. New York City, 143 F.3d 100, 102 (2d Cir. 1998)).  "Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict."  Id. (quoting United States v. Landau, 155 F.3d 93, 104 (2d Cir. 1998)).  Thus, in granting a motion for a new trial, the district court is "free to weigh the evidence [itself] and need not view it in the light most favorable to the verdict winner."  Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992).

The district court may order a new trial on its own motion for any reason that would justify granting one on a party's motion, no later than 10 days after entry of judgment.  Fed. R. Civ. P. 59(d).  In the case of inconsistent jury findings, if the jury's findings cannot be harmonized, a court must order a new trial.  Stephenson v. Doe, 332 F.3d 68, 79 (2d Cir. 2003) (emphasis added).

4

## IV. Discussion

### A. Inconsistent Jury Findings

Section 43(a) of the Lanham Act creates a federal cause of action for trade dress infringement.  To prevail on this claim, Plaintiff must show that its trade dress is either inherently distinctive or has acquired secondary meaning and that the similarity between its trade dress and that of Defendant would cause a likelihood of confusion as to the source of the product.  Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 377 (2d Cir. 1997).  The jury was provided with a questionnaire on which they were asked: (1) whether plaintiff articulated a precise expression of the character and scope of its claimed trade dress; (2) whether the claimed trade dress is non-functional; (3) whether the claimed trade dress acquired secondary meaning; and (4) whether there was "a likelihood of confusion between [FiberMark's] products and the Brownville Mansfield Cover."  The jury answered the first three question in the affirmative (thereby finding that the mottled appearance of FiberMark's Type I pressboard acquired secondary meaning), but found that Plaintiff failed to prove a likelihood of confusion.

To prevail on the anti-dilution claim under New York General Business Law § 360-l, Plaintiff must prove, first, that its trade dress is of truly distinctive quality or has acquired secondary meaning, and, second, that there is "likelihood of dilution."  Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 73 (2d Cir. 1994) (internal citation omitted).  A trade dress that acquired secondary meaning necessarily owns a distinctive quality.   New York Stock Exchange, Inc. v. New York, New York Hotel, LLC, 293 F.3d 550, 557 (2d Cir. 2002).  "New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive."  Id. (holding that, unlike the Lanham Act's anti-dilution

protection which only extends to marks that are inherently distinctive not to those that derive distinctiveness only by acquiring secondary meaning, New York anti-dilution protection extends to trademarks that are distinctive as a result of acquired secondary meaning) (internal citation omitted). On the § 360-l claim, the jury found that Plaintiff's trade dress was not distinctive.

The jury's finding of secondary meaning in the Lanham Act claim is ineluctably inconsistent with the jury's subsequent finding in the anti-dilution claim under N.Y. Gen. Bus. Law § 360-l that Plaintiff's trade dress was not distinctive. In effect, the jury was asked to decide twice whether FiberMark's mottled appearance acquired secondary meaning and came up with two separate answers. This Court specifically charged the jury that "[f]or purpose of this [anti-dilution] claim, plaintiff must demonstrate that its mark has acquired a secondary meaning. In determining whether FiberMark's mottled appearance has acquired a secondary meaning, you should apply the instructions I previously gave you with respect to the trademark infringement claim." Trial. Tr. 1605:15-20. Thus, the jury was instructed to apply the same analysis to both the trademark infringement and anti-dilution claims. The jury's finding that FiberMark's mottled appearance acquired secondary meaning is directly contradictory to the jury's finding that FiberMark's mottled appearance is not a trade dress protected under the anti-dilution statute of New York's General Business Law.

**B. Remedies for Inconsistent Jury Findings**

"[I]nconsistent special verdict answers raise constitutional concerns because 'proper deference to the parties' Seventh Amendment rights to trial by jury precludes entry of a judgment that disregards any material jury finding.'" Munafo v. Metropolitan Transp. Authority, 381 F.3d 99, 105 (2d Cir. 2004) (quoting Tolbert v. Queens Coll., 242 F.3d 58, 74 (2d Cir. 2001)). When

confronted with a potentially inconsistent jury verdict, the court must adopt a view that resolves any seeming inconsistency.  Munafo, 381 F.3d at 105; Fiacco v. City of Rensselaer, 783 F.2d 319, 325 (2d Cir. 1986) (internal citation omitted).  When there is no way to reconcile the inconsistent jury findings, the law demands a new trial.  Munafo, 381 F.3d at 105 ("[T]he Seventh Amendment requires a new trial only where a "'jury's answers cannot be harmonized rationally.'") (quoting Brooks v. Brattleboro Mem'l Hosp., 958 F.2d 525, 529 (2d Cir. 1992)); Jarvis v. Ford Motor Co., 283 F.3d 33 (2d Cir. 2002); Harris v. Niagara Mohawk Power Corp., 252 F.3d 592, 599 (2d Cir. 2001); LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 427 (2d Cir. 1995); Deloughery v. City of Chicago, 422 F.3d 611, 617 (7th Cir. 2005).

Plaintiff cites two cases from other circuits in which judgment as a matter of law ("JMOL") was contemplated as a possible remedy to inconsistent special verdict answers, American Cas. Co. of Reading, PA. v. B. Cianciolo, Inc., 987 F.2d 1302, 1305 (7th Cir. 1993) (granting judgment as a matter of law to "excise one answer in a way that leaves the rest consistent and enforceable."); Mycogen Plant Science, Inc. v. Monsanto Co., 243 F.3d 1316, 1326 (Fed. Cir. 2001) (court may grant judgment as a matter of law to remedy inconsistent jury verdict answers where one of the answers lacks "a legally sufficient evidentiary basis.").  However, this Court finds that JMOL is inappropriate in this case.  First, Plaintiff's argument is contrary to the Second Circuit's instruction that "[t]he correct course, if the answers were ineluctably inconsistent, would not be to enter judgment as a matter of law but rather to order a new trial."  Tolbert, 242 F.3d at 74; see Brooks, 958 F.2d at 529.  Second, unlike the two cases cited by Plaintiff, in the instant case, either jury finding is supported by the evidence, especially when viewed in the light most favorable to the nonmoving party.  Moreover, the fact that Plaintiff bears the burden of proof on distinctiveness

through secondary meaning under the Lanham Act, <u>Nora Beverages, Inc. v. Perrier Group of America, Inc.</u>, 164 F.3d 736, 743 (2d Cir. 1998), coupled with the fact that Plaintiff did not proffer evidence on three out of eight factors considered in the secondary meaning finding,[3] does not convince this Court that Plaintiff has satisfied the heightened standard required for JMOL.

Plaintiff also points to the fact that the jury returned with its verdict on the § 360-l claim after a few minutes of deliberation[4] as opposed to the favorable finding to Plaintiff (on the issue of secondary meaning) that took several hours.  This is an insufficient basis upon which to conclude that the jury was correct with respect to the trademark claim, but incorrect on the anti-dilution claim.  When it originally deliberated, the jury had numerous issues before it.  It would be sheer speculation for the Court to conclude that it spent most of that time on the issue of secondary meaning with respect to the trademark infringement claim.  Further, the short time the jury spent in deliberating "cannot serve as a basis for vacating the jury's verdict." <u>United States v. Williams</u>, 283 F. Supp. 2d 850, 857 (E.D.N.Y. 2003) ("Defendant's argument that the relatively short length of time the jury deliberated after the substitution of the alternates indicates that they failed to follow the Court's instructions is mere speculation and cannot serve as a basis for vacating the jury's verdict.").  Even though it is clear that the jury misapplied the Court's instruction, this Court cannot and does not speculate as to which of the jury findings resulted from any misunderstanding because there is no

_____

[3] Plaintiff concedes that it did not conduct a secondary meaning survey, nor did it introduce any evidence regarding unsolicited media coverage.  FiberMark's Memorandum in Support of its Renewed Motion for Judgment as a Matter of Law dated Aug. 23, 2005, at 19 n. 7.

[4] At first, the jury did not return a verdict on this claim due to the apparently confusing direction in the verdict form.  Upon the Court's instruction, the jury returned to consider the anti-dilution claim.  After a few more minutes of additional deliberation, the jury returned with a verdict on this claim.

priority among inconsistent jury findings.  Freeman v. Chicago Park Dist., 189 F.3d 613, 615 (7th

Cir. 1999); Heno v. Sprint/United Management Co., 208 F.3d 847, 854 (10th Cir. 2000).

Because the jury essentially was asked the same question twice, but came up with opposite

answers, the Court determines that the findings at issue here cannot be harmonized.  Even though

neither party moved for a new trial based on the inconsistent jury findings, this Court may order a

new trial on its own motion for any reason that would justify granting one on a party's motion no

later than 10 days after entry of judgment.  Fed. R. Civ. P. 59(d).  Because judgment has not yet

been entered, this Court can and does order a new trial on the secondary meaning/distinctiveness

issue based on the inconsistency of the jury findings.

### C.  Scope of the New Trial

The inconsistency identified above warrants a retrial of the anti-dilution claim under New

York law.  The remaining question is whether the inconsistency requires retrial of the trademark

infringement claim.  The Court finds that it does not.  Courts have discretion to single out issues for

a partial new trial if the issue to be retried is sufficiently distinct and separable from the others that a

trial of it alone may be had without injustice.  See Gasoline Products Co. v. Champlin Refining Co.,

283 U.S. 494, 515 (1931); Brooks v. Brattleboro Memorial Hosp., 958 F.2d 525, 530 (2d Cir. 1992)

(internal citation and quotation marks omitted); see also Ryan by Ryan v. McDonough Power

Equipment, Inc., 734 F.2d 385, 388 (8th Cir. 1984).  Whether and to what extent issues should be

separated out should be considered in light of the legal principles that, even when general verdicts

are vacated, the parties are still bound by the jury's answers to the written interrogatories, Green v.

American Tobacco Co., 325 F.2d 673, 678 (5th Cir. 1963) ("the parties may not re-litigate the issues

already decided under the guise of presenting evidence on the issue [that needs to be retried]"), and

the Court may not enter a judgement that disregards any material jury finding.  LeBlanc-Sternberg v. Fletcher, 67 F.3d at 428.

Here, the essential question is whether the jury's finding on the likelihood of confusion in the federal trade dress infringement claim can stand despite the invalidation of the jury finding on the secondary meaning in the same claim.  The Court finds that it can.  On the special verdict form concerning the Lanham Act claim, the jury was asked to make two separate findings: (1) whether there was secondary meaning; and (2) whether there was a likelihood of confusion.  Defendant prevailed on this claim at trial because, although the jury found that the mottled appearance had acquired secondary meaning, it also found that there was no likelihood of confusion.

The issues of secondary meaning and the likelihood of confusion are "distinct and separable" legal concepts.  Compare Bateman v. Mnemonics, Inc., 79 F.3d 1532, 1548-49 (11th Cir. 1996); see Union Manufacturing Co., Inc. v. Han Baek Trading Co., Ltd., 1984 WL 643, at *1 (S.D.N.Y. 1984), judgment vacated on other grounds, 763 F.2d 42 (2d Cir. 1985).  Although the evidence in support of each of these issues may be similar, they remain distinct legal issues.  See Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 462 (2d Cir. 1983).  For the secondary meaning inquiry, the jury was asked to consider eight factors[5] based on Mana Products, Inc. v. Columbia Cosmetics Manufacturing, Inc., 65 F.3d 1063, 1071 (2d Cir. 1995), and for the likelihood of confusion inquiry,

_____

[5]  With regard to the secondary meaning, the jury was directed to consider any evidence relating to, (a) the length and manner of its use; (b) the nature and extent of advertising and promotion, (c) sales volume, (d) other efforts made by the plaintiff to promote the connection between the mottled appearance and the plaintiff's product; (e) consumer surveys; (f) consumer testimony as to the identity of the source of products displaying the mottled appearance; (g) copying by others; and (h) unsolicited media coverage of the product.

the jury was given eleven factors[6] based on the <u>Polaroid</u> multifactor balancing test.  <u>Star Indus. Inc.,</u>

<u>v. Bacardi & Co. Ltd.</u>, 412 F.3d 373, 384 (2d Cir. 2005) (citing <u>Polaroid Corp. v. Polarad Elecs.</u>

<u>Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961)).  The inquiry into the secondary meaning focuses on the

distinctiveness of Plaintiff's trade dress whereas the inquiry into the likelihood of confusion focuses

on the comparison (or similarities) between Plaintiff's and Defendant's products and any potential

confusion between the products.  Because these are distinct issues on which the jury returned

separate findings, the secondary meaning issue is separable from the likelihood of confusion issue

for purposes of a retrial.  A new trial on the trademark infringement claim is unwarranted because it

would result in disregarding a material jury finding (that Plaintiff failed to prove likelihood of

confusion).  <u>See</u> <u>Green v. American Tobacco Co.</u>, 325 F.2d 673, 678 (5th Cir. 1963); <u>see also</u>

<u>Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.</u>, 106 F.3d 894, 901-03,

901 n.3 (9th Cir. 1997).

---

[6]  The jury was instructed that likelihood of confusion is also determined by evaluating the
following factors: (1) the degree of similarity between FiberMark's mottle and the mottle on
Brownville's Mansfield cover; (2) the manner and method in which the plaintiff and the defendant
used their respective symbols including the similarity of the products sold or offered for sale and
whether they were sold or offered for sale in the same or similar stores or outlets; (3) the strength of
plaintiff's mottled appearance []; (4) the price of the goods and other factors indicative of the degree
of care and attention likely to be used by consumers when making a purchase; (5) the length of time
the defendant used the mottled appearance without evidence of actual confusion; (6) the intent of
the defendant in adopting a mottled appearance on the Mansfield cover []; (7) evidence, if any, of
actual confusion; (8) other factors about the appearance of plaintiff's and defendant's respective
products that would tend to reduce any tendency to confuse the purchasers about the source or origin
of their products; (9) the extent to which, if at all, the target of the parties' sales or marketing efforts
is the same; (10) sophistication of the purchasers of the products; and (11) the quality of
Brownville's Mansfield cover.

**D.  Plaintiff's Motion for JMOL on the Federal Trade Dress Infringement Claim**

Plaintiff moves for a judgment as a matter of law on the likelihood of confusion element of

its trade dress infringement claim.  In the Second Circuit, the likelihood of confusion is evaluated

under the multifactor balancing test set in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 295

(2d Cir. 1961).  Star Indus. Inc., v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005).  The

Polaroid factors are not exhaustive and are not to be rigidly followed because "[n]o single factor is

dispositive, nor is a court limited to consideration of only these factors."  Car-Freshner Corp. v. Big

Lots Stores, Inc., 314 F. Supp. 2d 145, 149 (N.D.N.Y. 2004) (citing Polaroid, 287 F.3d at 495).

"[T]he ultimate conclusion as to whether the likelihood of confusion exists is not to be determined

in accordance with some rigid formula."  Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799

F.2d 867, 872 (2d. Cir. 1986)   "[E]ach factor must be evaluated in the context of how it bears on

the ultimate question of likelihood of confusion as to the source of the product," because each case

presents "its own peculiar circumstances."  Id. at 872.  The resolution of each separate factor is a

finding of fact, but the balancing of the factors is a matter of law.  Star Indus. Inc., 412 F.3d at 384.

Analysis of each factor and the ultimate balancing should be done with the focus on the

particular industry where the marks compete.  See Brennan's, Inc. v. Brenna's Restaurant, L.L.C.,

360 F.3d 125, 133 (2d Cir. 2004).  This is because likelihood of confusion is related to consumer

expectations.  Id.  The Seventh Circuit has indicated that in determining whether there exists a

likelihood of source confusion, "the proper inquiry centers on the confusion of consumers in the

market for the particular product at issue."  Dorr-Oliver, Inc. v. Fluid-Quip, Inc., 94 F.3d 376, 382

(7th Cir. 1996).  In reversing the district court's finding of likelihood of confusion, the Circuit Court

held that "[t]he proper examination is not whether some people viewing [the product] might be

confused, but rather whether *consumers* in the market for [the product] are likely to be confused." Id. (emphasis original).  Therefore, it is crucial for this Court to address who the relevant consumers are in this case before engaging in the analysis of Polaroid factors or the ultimate balancing of the factors.

**1.  Whether converters or end users are the relevant consumer group for the purpose of determining the likelihood of confusion.**

On June 24, 2005, this Court referred the parties to Continental Plastic Containers v. Owens Brockway Plastic Products, Inc., 141 F.3d 1073 (Fed. Cir. 1998), regarding the issue of the relevant consumer group in the instant case.  In Continental Plastic Containers, the Federal Circuit affirmed the district court's finding that the relevant consumer base in determining the likelihood of confusion was wholesale purchasers of empty bottles without lids or labels, rather than ultimate retail consumers of bottled fruit juice.  Id. at 1080.  In response to the Court's referral, Plaintiff filed a memorandum, but Defendant did not.  In the memorandum, Plaintiff argued that Continental Plastic Containers is different from the instant case and that end users are the relevant consumer group for the pressboard products.  In support, Plaintiff argued that FiberMark's pressboard products are the primary ingredient in the products - such as three-ring binders, and data binders - purchased by end users, whereas the plastic bottles in Continental Plastic Containers were secondary to the fruit juices purchased by consumers in that case.  FiberMark, Inc's Supplemental Trial Memorandum Regarding the Definition of the Relevant Consumer at 1.  This Court finds this argument unpersuasive.

The jury could have reasonably concluded that the converters are the relevant market. Bottles are to fruit juice as the covers (made out of pressboard) are to the binders.  See Continental

13

Platic, 141 F.3d at 1081 ("The wholesalers to whom [Continental] markets its bottles are not in the bottle business, they are in the juice business.  While the shape of the bottle may create confusion as to the source of the juice, this is irrelevant to the determination as to confusion as to the source of the bottles.").  Just as consumers buy juice and not the plastic bottles, end users buy binders, not the pressboard.  Also, pressboard is used only for the cover of the binder, not the binder itself.

Further, there was insufficient evidence upon which the jury could reasonably have found end-users to be the relevant market.  Again, "the proper inquiry centers on the confusion of customers in the market for *the particular product at issue*." Dorr-Oliver, Inc., 94 F.3d at 382 (emphasis added).  The only FiberMark product at issue in this case is the pressboard with mottled appearances, not just any products FiberMark sells.  There was no evidence proffered at the trial that Brownville sold its imitation pressboard to end-users.  Similarly, there was no evidence that FiberMark sold pressboard to end-users.  Although FiberMark's director of marketing testified that it sometimes sells its product directly to end users "who would use the product in, say, their own business cards or on their own brochures," Trial Tr. 181:22-182:4, this testimony, if it has not been disregarded by the jury, would establish that FiberMark sells some products directly to end users, but it does not necessarily establish that it sells pressboard to end users.  Based on the record evidence, the jury could reasonably have concluded that FiberMark sells the pressboard only to converters.  Accordingly, the jury could have reasonably found that converters are the only relevant consumer group in this trade dress infringement claim.

Plaintiff's other arguments are equally unpersuasive.  Plaintiff argues that its evidence demonstrates that end users recognize the mottled appearance in FiberMark's Type I pressboard.  However, the only evidence provided was testimony by a purchasing manager of one of the

14

converters that the mottled appearance seemed to be what the end users want.  Trial Tr. 663:22-664:24 (Erwin).  At most, this testimony is hearsay evidence that provides an insufficient basis upon which to conclude that end users constitute the relevant consumer group.  There was no other evidence that end-users identified the mottled appearance with FiberMark's type I pressboard or that would otherwise compel the conclusion that converters are not the relevant consumer group.

**2.  Whether legally sufficient evidentiary basis exist in the record to support the jury's finding that there was no likelihood of confusion.**

There was sufficient evidence upon which the jury could have reasonably concluded that FiberMark failed to establish a likelihood of confusion.  Some of the relevant factors do weigh in favor of Plaintiff, such as the intent of Defendant in adopting a mottled appearance on the Mansfield Cover.  The Court cannot, however, hold that the jury verdict is "the result of sheer surmise and conjecture, or [] there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]."  Caruolo, 226 F.3d at 51.  For example, with regard to the degree of similarity factor, despite the uncontroverted testimonies among witnesses that the mottle on Mansfield Cover looked very much like FiberMark's mottle, see Trial Tr. 367:19-20 (Boss); 462:2-3 (Rood); 665:3-5 (Erwin), the fact that the two marks appear similar is not dispositive.  Brennan's, Inc. v. Brenna's Restaurant, L.L.C., 360 F.3d 125, 133 (2d Cir. 2004).  Rather, the question is whether such similarity is more likely than not to cause consumer confusion.  Id.  Because the ultimate issue is the likelihood of confusion, analysis focuses on the particular industry where the marks compete.  Id.

Focusing on the converter level, this Court finds that confusion is unlikely because of the sophistication of the purchasers.  "Where the purchasers of a products [sic] are highly trained

professionals, they know the market and are less likely than untrained customers to be misled or confused by the similarity of different marks." <u>Virgin Enters. Ltd. v. Nawab</u>, 335 F.3d 141, 151 (2d Cir. 2003). There was insufficient evidence that the relevant consumer group here (the converters) are actually confused or likely to be confused because they know from whom they are purchasing the pressboard and also know the difference in the qualities of the pressboard.

FiberMark argues that converters have been actually confused as to the source of Brownville's Mansfield Cover. However, there was evidence of only a single instance of a converter having sent back to FiberMark some rejected Mansfield Cover products among other rejected FiberMark product. Even though "the existence of actual consumer confusion indicates a likelihood of consumer confusion," <u>id.</u>, "[i]solated instances of misdeliver[y] are inconsequential." <u>Nikon, Inc. v. Ikon Corp.</u>, 803 F. Supp. 910, 921 (S.D.N.Y. 1992) (internal citations omitted). In light of the absence of any other evidence of confusion among coverters, the jury could reasonably have deemed this sole instance as an isolated incident that was insufficient to establish a likelihood of confusion. The jury could have reasonably concluded that, by rejecting the Mansfield Cover, the converter recognized the differences in quality between that Mansfield Cover and Genuine Pressboard. Further, the fact that a converter specifically requested a mottled appearance from Brownville would tend to negate any reasonable inference of confusion. A converter is unlikely to be deceived by something it asked for. For the foregoing reasons, FiberMark's motion for a Judgement as a Matter of Law on the federal trade dress infringement claim is denied.

### E. Common Law Claim of Unfair Competition

FiberMark also seeks JMOL on the New York unfair competition claim. To prevail in a common law unfair competition claim under New York law, "the plaintiff must show either actual

16

confusion in an action for damages or a likelihood of confusion for equitable relief," and, additionally, "there must be some showing of bad faith."  Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 35 (2d Cir. 1995) (internal citations omitted).  Because FiberMark is seeking only equitable relief on this claim, no showing of actual confusion is required.  A showing of a likelihood of confusion is sufficient.

As FiberMark concedes, the same factors that are relevant to a determination of likelihood of confusion for purposes of the trade dress claim are also relevant to a determination of likelihood of confusion for purposes of the common law unfair competition claim.  The jury did not return any verdict on this claim because the jury's finding that there was no likelihood of confusion in the federal trade dress claim was dispositive on this claim.  As discussed, the jury's finding of no likelihood of confusion on the federal trade dress claim is supported by legally sufficient evidence.  For the same reasons, this Court finds that there is no likelihood of confusion in the common law unfair competition claim and that JMOL is not warranted.

### F.  Dilution Claim based on New York General Business Law § 360-l

New York General Business Law § 360-l (formerly § 368-d) states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

The Second Circuit held that this section applies "with equal force to the protection of trade dress." Merriam-Webster, Inc. v. Random House, Inc., 35 F.3d 65, 73 (2d Cir. 1994).

To prevail on this claim, Plaintiff must prove, first, that its trade dress is of truly distinctive quality or has acquired secondary meaning, and, second, that there is "likelihood of dilution."  Id.

17

(citing <u>Sally Gee, Inc. v. Myra Hogan, Inc.</u>, 699 F.2d 621, 625 (2d Cir. 1983)).  The likelihood of

confusion is not a necessary element of this claim.  <u>Sally Gee, Inc.</u>, 699 F.2d at 625.

The jury returned a verdict finding that FiberMark did not establish that it owns a distinctive

trade dress.  As discussed, this verdict is inconsistent with the jury's determination on the federal

trade dress infringement claim that FiberMark's mottled appearance acquired secondary meaning.

This inconsistency cannot be harmonized and must be retried.  Because the distinct quality of the

mark, i.e. secondary meaning of the trade dress, was the only factual finding by the jury in this

claim, the anti-dilution claim needs to be re-tried in its entirety.

### G. Deceptive Act Claim based on New York General Business Law Section 349

At trial, the jury returned a verdict in favor of Plaintiff on the deceptive acts and practices

claim under the New York General Business Law § 349.  The jury awarded nominal damages of

$1.00.  Defendant filed a timely motion for a judgement as a matter of law or, in the alternative, a

new trial.  Plaintiff also filed a timely motion for a judgement as a matter of law or, in the

alternative, a new trial on the jury's award of nominal damages.

New York General Business Law § 349 provides a cause of action for "deceptive acts or

practices in the conduct of any business, trade or commerce or in the furnishing of any service in

this state"[7] to "any person who has been injured by reason of any violation of this section."[8]  To

prevail on this claim, Plaintiff must prove three elements: first, that the challenged act or practice

was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff

suffered injury as a result of the deceptive act.  <u>Stutman v. Chem. Bank</u>, 95 N.Y.2d 24, 29 (2000)

---

[7]  § 349(a).

[8]  § 349(h).

(internal citation omitted).  "[C]orporate competitors . . . have standing to bring a claim under this [statute] . . . so long as some harm to the public at large is at issue."  Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995), cert. denied, 516 U.S. 1114 (1996) (internal citation omitted).  "The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor."  Id.

The threshold question is whether Brownville's act or practice was consumer-oriented.  See Shapiro v. Berkshire Life Ins. Co., 212 F.3d 121, 126 (2d Cir. 2000).  Under New York law, a claim implicates "consumer-oriented" conduct when a deceptive act or practice has "a broader impact on consumers at large."  Gaidon v. Guardian Life Ins. Co., 94 N.Y.2d 330, 344 (1999) (quoting Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)).  For this Court to uphold the jury verdict on this element, there must be legally sufficient evidence that Brownville's act or practice of selling pressboard to converters has a broad impact on consumers at large.

The "public at large" or "consumers at large" means the end-users, not the converters.  There was insufficient evidence that Brownville sold or attempted to sell its pressboard to end-users.  Rather, the evidence was that Brownville sold its pressboard to converters.  Therefore, if the "consumers at large" means end-users, then Brownville's acts were not consumer-oriented and the jury finding must be vacated.  The only possible interaction between Defendant and the end-users was through the stream of commerce when the final products produced by the converters with Defendant's product were sold to the public.  Plaintiff bases its argument on this theory.  There are, however, flaws with this theory.

Plaintiff bases its stream of commerce argument on the jury's finding of the secondary

meaning of FiberMark's mottled appearance.[9]  As discussed earlier, this jury finding has been

vacated for its inconsistency with the subsequent finding in the anti-dilution claim.  Therefore,

Plaintiff's stream of commerce argument cannot stand on this ground.

Even assuming FiberMark's product has acquired secondary meaning, there is insufficient

evidence upon which the jury could have concluded that Brownville's acts were consumer oriented.

First, as noted, there was insufficient evidence of direct sales by Brownville or FiberMark of

pressboard or imitation pressboard products to end-users.  Second, there was insufficient other

evidence that Brownville's acts were aimed at consumers (end-users).  See Maurizio v. Goldsmith,

230 F.3d 518, 521 (2d Cir. 2000) ("To make out a prima facie case under Section 349, a plaintiff

must demonstrate that . . . the defendant's deceptive acts were directed at consumers.").  Third, there

was insufficient evidence that any consumer in New York was deceived.  Goshen v. Mut. Life Ins.

Co. of New York, 98 N.Y.2d 314 (2002) ("[T]he transaction in which the consumer is deceived

must occur in New York. . . . [T]he deception of a consumer must occur in New York").  Fourth,

this case entails "claims that arise out of a trademark infringement action, and disputes between

competitors where the core of the claim is harm to another business as opposed to consumers."

Gucci America, Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003).  In such

situations, "courts have found [] a public harm that is too insubstantial to satisfy the . . .

requirements of § 349."  Id.

---

[9]  Plaintiff argues that "[t]he jury found that consumers recognize FiberMark's mottled trade dress as signifying a source, and Brownville has not moved to vacate that finding.  The jury's finding that FiberMark's mottled trade dress has acquired secondary meaning demonstrates that Brownville's placement into commerce of an imitation pressboard bearing that same mottled dress 'is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" FiberMark's Memorandum in Opposition to Brownville's Renewed Motion for Judgment as a Matter of Law and Brownville's Motion for a New Trial dated Sept. 6, 2005, at 15-16.

The only time courts have found indirect interaction with consumers to fall within the purview of § 349 is when the deceptive acts or practices involve threats to public health or safety. See e.g. Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir. 1995) (holding that the plaintiff had adequately shown harm to the public interest, in part because defendants "gave false information ...[to] a regulatory agency primarily concerned with the safety of the public."); Sports Traveler, Inc. v. Advance Magazine Publishers, No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *2 (S.D.N.Y. Mar. 24, 1997) ("[F]ederal courts have interpreted the statute's scope as limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the public health or safety.").  Even Plaintiff concedes that "commentators and federal district courts may have considered it desirable to limit § 349(a) to cases involving threats to public health or safety."  FiberMark's Memorandum dated Sept. 6, 2005, at 12; see e.g., Greenlight Capital, Inc. v. Greenlight (Switz.) S.A., No. 04 Civ. 3136(HB), 2005 U.S. Dist. Lexis *2, at 23. (S.D.N.Y. Jan. 3, 2005) (dismissing Section 349 claim because the harm alleged was confusion on the part of investors, brokers, and others in the financial services industry, not harm to the public at large);   Gucci America, Inc. v. Duty Free Apparel, Ltd., 277 F. Supp. 2d 269, 274 (S.D.N.Y. 2003) (dismissing Section 349 claim because lost profits and a general loss of good will from consumers are harm to a business as opposed to the public at large); Sports Traveler, Inc. v. Advance Magazine Publishers, No. 96 Civ. 5150 (JFK), 1997 WL 137443, at *3 (S.D.N.Y. Mar. 24, 1997) (dismissing Section 349 claim because "[a]lthough Plaintiff also claims that the alleged infringement has created consumer confusion, the complaint is devoid of allegations supporting an inference that the public's health or safety is at stake as a result of the alleged infringement.").  There is no evidence in this case of any harm to the public's health or safety.

There was insufficient evidence that Brownville's actions affected the public interest or that Brownville's actions harmed consumers in New York.  As there is legally insufficient evidence supporting the jury finding, even when viewed in the light most favorable to the nonmoving party, the jury findings on this claim cannot stand.

Even if the converters can be the "consumers at large," this claim cannot stand because there was insufficient evidence of misleading those consumers.  Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003) (quoting Marcus v. AT & T Corp., 138 F.3d 46, 64 (2d Cir. 1998) ("An act is deceptive within the meaning of the New York statute only if it is likely to mislead a reasonable consumer.").  The converters knew who they were buying from.   "[T]here can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed."  Broader v. MBNA Corp., 722 N.Y.S.2d 524 (N.Y. App. Div. First Depart. 2001) (internal citation omitted).  The converters knew that the Mansfield cover was not Type I pressboard.  They knew it was manufactured by Brownville and not by FiberMark.  In fact, the evidence before the Court is that it was the converters themselves who requested the mottled appearance on Brownville's product.  Thus, there could not have been any confusion or ambiguity as to the source, origin, or quality of the product, and hence no deception.  The analysis concerning the likelihood of confusion issue, supra at 15, similarly suggests no deception or misleading on the converter level.  Therefore, Defendant's motion for a judgment as a matter of law on the deceptive acts and practice claim is granted.[10]

_____

[10] The Court further notes that a required element under § 349 is proof that the Defendant's conduct caused injury to the plaintiff.  Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).  It is doubtful whether there was sufficient proof that FiberMark sustained any actual injury on account of Defendant's conduct.  By its award of nominal damages, the jury necessarily found that FiberMark did not sustain any pecuniary damages (the jury initially awarded $0.00 and, apparently upon reading the instruction about nominal damages, crossed out the award of $0.00 and entered an award of $1.00).

### H. Motion for Permanent Injunctive Relief

Plaintiff moved for a permanent injunction based on the jury's favorable finding on the deceptive acts and practice claim. However, as this Court has vacated the jury's finding on that claim, there is no ground for a permanent injunction. Plaintiff may, however, move for an injunctive relief based on the anti-dilution claim if, after a new trial, the jury finds that Brownville violated New York General Business Law section 360-l.

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that:

(1) A **NEW TRIAL** is to be held on the date set by the Clerk on the anti-dilution claim based on New York General Business Law § 360-l;

(2) Plaintiff's motion for judgment as a matter of law on the federal trade dress infringement claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the common law unfair competition claim, and its motion for permanent injunctive relief are **DENIED**, and

(3) Defendant's motion for a judgment as a matter of law on the deceptive act and practices claim under New York General Business Law § 349 is **GRANTED**.

**IT IS SO ORDERED.**

Dated: December 9, 2005

Thomas J. McAvoy
Senior, U.S. District Judge

23